United States District Court
District Of Maine

| | |
|---|---|
| Marc D. Christensen, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Docket No. |
| ) | |
| St. Mary's Health System ) | |
| ) | |
| and ) | |
| ) | |
| St. Mary's Regional Medical Center ) | |
| ) | |
| ) | |
| Defendants. ) | |

## Complaint and Demand For Jury Trial and Injunctive Relief Sought

Marc D. Christensen complains against St. Mary's Health System and St. Mary's Regional Medical Center (collectively referred to as St. Mary's) as follows:

### Summary

1. Dr. Christensen is a board-certified neurosurgeon, with a Ph.D. from Harvard University, who was fired by St. Mary's for repeatedly making internal complaints to top management officials about unsafe and out-of-date operating room equipment at St. Mary's Regional Medical Center, when this unsafe equipment was leading to the submission of fraudulent claims by

1

St. Mary's to the United States Government's Medicare and Medicaid system for spine and cranial surgical procedures performed by Dr. Christensen.

## Parties

2. Dr. Marc Christensen is a resident of Falmouth, Cumberland County, Maine.

3. Defendants are nonprofit corporations with established places of business in Lewiston, Androscoggin County, Maine.

## Jury Trial Demand

4. Under Fed. R. Civ. P. 38(b), Plaintiff demands trial by jury on all issues triable to a jury.

## Jurisdiction and Venue

5. Because this action arises under the False Claims Act, 31 U. S. C. §§ 3729-3733, this Court has proper federal question subject matter jurisdiction under 28 U.S.C. §§ 1331, 1345 and 31 U.S.C. § 3732(a).

6. Venue is proper in this District under 31 U.S.C. § 3732(a) and 28 U.S.C. § 1391(b)(2) because Defendants resides in or transacts business in this judicial district and because one or more acts proscribed by 31 U.S.C. § 3729 occurred in this district.  Under Local Rule 3(b), this action is properly filed in Portland because this case arises in Androscoggin  County.

## Facts

7. Dr. Christensen is a board certified neurosurgeon who earned a Ph.D. in Cellular Neurobiology after he completed Medical School.

8. In 2000, he completed a Post Doctorate in Neural Regeneration.

9. In 2002, he completed a Neurosurgical Fellowship at Massachusetts General Hospital, Harvard.

10. He worked at St. Mary's as a Neurosurgeon from 2003 until February 20, 2015.

11. Dr. Christensen was highly respected across the state of Maine for the high quality of my work.

12. In July 2013, St. Mary's public spokesperson told the press that Dr. Christensen "is renowned in his field."

13. He repeatedly complained to St. Mary's about the unsafe operating conditions created when St. Mary's refused to purchase the required upgrades to the Medtronic Surgical Navigation System. As a result, the only Navigation System made available to him for performing brain and spine surgery was so out of date that it was no longer being serviced by Medtronic or any other provider.

14. Dr. Christensen repeatedly made internal complaint that the out of date navigation system created obviously unsafe conditions to perform neurosurgery.

15.   In particular, Dr. Christensen repeatedly reported his safety concerns to high level officials when St. Mary's refused to purchase the required upgrades to the operating room equipment referred to as the Medtronic Surgical Navigational System.

16.   Because St. Mary's continued to drag their feet and stone-walled Dr. Christensen's repeated requests for safe equipment in the operating room, in late 2014 Dr. Christensen determined that he had no ethical choice but to refuse to continue to operate on complex neurosurgical cases because to do so was exposing his patients to operating room conditions with an unacceptable risk of serious injury or death.

17.   In an email dated December 23, 2014 to multiple high level officials at St. Mary's, Dr. Christensen stated: that "I have been putting patients needing this technology for safer and contemporary surgery on hold."

18.   On February 20, 2015, six weeks following Dr. Christensen's refusal to perform surgeries on patients because of the unsafe operating room equipment, St. Mary's fired Dr. Christensen from his employment position as neurosurgeon.

19.   St. Mary's intentionally terminated the employment of Dr. Christensen because he engaged in protected activity under the False Claims Act.

20. Dr. Christensen engaged in protected conduct under the False Claims Act anti-retaliation provision by taking actions in furtherance of a False Claims Act action and making other efforts to stop one or more a violations of the False Claims Act

21. Defendant fraudulently billed the U.S. Government through Medicare and Medicaid for spine and cranial surgeries performed by Dr. Christensen with the hospital's unsafe operating room equipment.

## Legal Claim

### Retaliation under the False Claims Act
### 31 U.S.C. § 3730(h)

22. The allegations in paragraphs 1-18 are realleged.

23. In violation of the anti-retaliation provision of the False Claims Act, 31 U.S. C. § 3730(h), St. Mary's intentionally retaliated against Dr. Christensen by terminating him because he engaged in protected activity under the False Claims Act, including but not limited to his reports of unsafe operating room equipment that was leading to unlawful and fraudulent billing to Medicare and Medicaid by St. Mary's,

24. As a direct and proximate result of Defendant's intentional retaliation against Plaintiff, he has suffered and will continue to suffer damages in violation of 31 U.S.C. § 3730(h), including, but not limited to lost

wages and benefits, humiliation and embarrassment, financial distress, emotional pain and distress, suffering, inconvenience, mental anguish, loss of enjoyment of life, injury to reputation, injury to career, deprivation of professional and career opportunities, and other pecuniary and non-pecuniary losses.

25. Dr. Christensen is pursuing all possible methods of proving this retaliation, including but not limited to circumstantial and direct evidence, pretext evidence, causation based on a single unlawful motive, and causation based on mixed motives including an unlawful motive.

26. Plaintiff requests relief against Defendants as follows:

    a. Enter Judgment in Plaintiff's favor;

    b. Enter declaratory relief that St. Mary's violated Plaintiff's statutory civil rights to be free from unlawful retaliation;

    c. Enjoin Defendant, its agents, successors, employees, and those acting in concert with Defendant from continuing to violate Plaintiff's' rights;

    d. Enter injunctive relief ordering Defendant to:

        • Provide effective civil rights training for all human resources employees and all supervisors on the requirements of all applicable laws prohibiting whistleblower retaliation under

      the FCA and complete this training within 60 days of the entry of Judgment for Injunctive Relief;

- Provide this training for two years after the date judgment is entered to all new human resources and supervisory employees within 60 days of their starting the position;
- Maintain attendance sheets identifying each person who attended each training session and forward a copy of the attendance sheets to Plaintiff's counsel within seven days of each training session;
- Post at each of its worksites a copy of a remedial notice detailing the judgment in this case as well as the order providing injunctive relief.

e. Order Defendant to reinstate Plaintiff to his positions as if the retaliation had not occurred or, in lieu of employment if such employment is determined to be impracticable, order front pay for future lost wages and benefits;

f. Award Plaintiff back pay, lost employment benefits, other lost compensation, and interest on those amounts;

g. Award Plaintiff two times the amount of back pay and interest on the back pay under the False Claims Act, 31 U.S.C. § 3730(h)(2);

h. Award Plaintiff compensatory damages in an amount to be determined at trial of this matter;

i. Award Plaintiff special damages under 31 U.S.C. § 3730(h)(2);

j. Award Plaintiff an amount to offset the state and federal taxes he will be required to pay for compensatory damages and any increased taxes he will have to pay because he has received a lump sum for lost wages, employment benefits, or other lost compensation;

k. Award Plaintiff nominal damages;

l. Award Plaintiff full costs and reasonable attorney's fees, including legal expenses, expert witness fees, and costs of suit;

m. Award Plaintiff prejudgment interest; and

n. Award Plaintiff such other and further relief as may be just and proper.

Date:   February 20, 2018                    Respectfully submitted,

/s/ David G. Webbert
David G. Webbert
Johnson, Webbert & Young, L.L.P.
160 Capital Street, P.O. Box 79
Augusta, Maine 04332-0079
(207) 623-5110
dwebbert@work.law